UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARTH ISLAND INSTITUTE, a California non-profit; and CENTER FOR BIOLOGICAL DIVERSITY, a non-profit corporation, | No. 2:05-cv-1608-MCE-GGH |
| Plaintiffs, | |
| v. | ORDER |
| UNITED STATES FOREST SERVICE; DALE BOSWORTH, in his official capacity as Chief of the U.S. Forest service; and JOHN BERRY, in his capacity as Forest Supervisory for the Eldorado National Forest, | |
| Defendants. | |
| SIERRA PACIFIC INDUSTRIES, | |
| Defendant-Intervenor, | |
| and | |
| TUOLUMNE COUNTY ALLIANCE FOR RESOURCES AND ENVIRONMENT; SIERRA RESOURCE MANAGEMENT, INC.; TUOLUMNE COUNTY CHAMBER OF COMMERCE; and CALIFORNIA FOREST COUNTIES SCHOOLS COALITION, | |
| Defendant-Intervenors. | |

1

1   By Order dated September 8, 2006, this Court allowed
2 Tuolumne County Alliance for Resources and Environment
3 ("TuCARE"), Sierra Resource Management, Inc., the Tuolumne County
4 Chamber of Commerce, and the California Forest Counties Schools
5 Coalition to intervene in this matter on a permissive basis under
6 Federal Rule of Civil Procedure 24(b)[1] for the limited purpose of
7 whether a more substantial surety bond should be required as a
8 prerequisite for continued maintenance of the preliminary
9 injunction entered on August 31, 2006.  Briefing in that regard
10 was submitted by the TuCARE Intervenors as enumerated above on
11 September 11, 2006.  In addition, on September 13, 2006, the
12 remaining Intervenor Defendant, Sierra Pacific Industries, filed
13 its own brief requesting that bond in this matter, currently set
14 at $1,000.00, be increased to $200,000.00.  The Court now
15 considers those requests.
16   Rule 65(c) provides that issuance of preliminary injunctive
17 relief should be conditioned upon posting of security by the
18 applicant, stating in pertinent part as follows:

> (c) Security.  No restraining order or preliminary
> injunction shall issue except upon the giving of security by
> the applicant, in such sum as the court deems proper, for
> the payment of such costs and damages as may be incurred or
> suffered by any party who is found to have been wrongfully
> enjoined or restrained.

23 ///
24 ///
25 ///
26 ///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

2

Although the language employed by Rule 65(c) is mandatory in nature, it has long been the rule that plaintiffs who seek preliminary injunctive relief in actions to enforce the National Environmental Policy Act ("NEPA") are excused from the general rigor of the Rule's security requirement.  In <u>Friends of the Earth, Inc. v. Brinegar</u>, 518 F.2d 322, 323 (9th Cir. 1975), the Ninth Circuit reasoned that because NEPA plaintiffs are often public interest groups possessing few resources, requiring substantial bonds from such litigants could "preclude[] effective and meaningful appellate review."  <u>Id.</u>  Similarly, in another case involving public interest litigants, <u>Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency</u>, 766 F.2d 1319, 1325-26 (9th Cir. 1985), the Ninth Circuit reiterated that a nominal bond is appropriate where a party cannot afford to post a substantial bond and if imposition of a bond requirement would serve to prevent judicial review.  Plaintiffs herein therefore have the burden of demonstrating that posting such a bond would cause undue hardship.

In the present case, Plaintiffs seek to enforce both NEPA and the National Forest Management Act ("NFMA") under the auspices of the Administrative Procedures Act ("APA").  In enacting NEPA, Congress indicated that private environmental organizations should assist in its enforcement.  See 42 U.S.C. § 4331(a); <u>Natural Res. Def. Council, Inc. v. Morton</u>, 367 F. Supp. 167, 168 (D.D.C. 1971).  Consequently, in analyzing the propriety of security in this case, the Court should first look at whether requiring a substantial bond in this case would stifle such enforcement.

1    In arguing for additional security, Intervenor Defendants
2 point primarily to the fact that Plaintiffs' 2004 published tax
3 returns show total year-end assets of $5.99 million for Earth
4 Island Institute and $2.35 million for the Center for Biological
5 Diversity.  Based on those numbers, Intervenors argue that
6 Plaintiffs "should be able to afford a sizeable bond" without
7 potentially thwarting the viability of environmental citizen
8 actions.  (See TuCARE Opp'n, 12:14-16).

9    As its primary authority for contending that bond in this
10 matter be increased, Intervenors cite the Ninth Circuit's recent
11 decision in Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113 (9th
12 Cir. 2005).  Save Our Sonoran, like the present case, involved an
13 environmental challenge under NEPA.  While the Ninth Circuit did
14 affirm a $50,000.00 bond, it nonetheless recognized the well-
15 established authority enumerated above which militates against
16 requiring substantial security where doing so would impair access
17 to judicial review.  Id. at 1126, citing Van De Camp, 766 F.2d at
18 1325.  Instead, the court's decision makes it clear that the
19 environmental group in Save Our Sonoran simply failed to
20 establish at the hearing on the bond issue that imposition of a
21 substantial bond would be detrimental.  As the Ninth Circuit
22 states:

> "Here, the district court conducted a hearing.  SOS [Save Our Sonoran] had the opportunity to show that the imposition of anything other than a nominal bond would constitute an undue hardship; however, SOS did not tender such evidence at the hearing."

26 Id.
27 ///
28 ///

4

In the present case, on the other hand, Plaintiffs have proffered evidence that an increased bond would severely impact their ability to pursue environmental litigation through this case and others. The Declaration of Chad Hanson in Opposition to Increase in Surety Bond indicates that the funding responsibility for pursuing the instant lawsuit rests entirely with the John Muir Project ("JMP"), a discrete project within the organizational umbrella of the Earth Island Institute. As Mr. Hanson explains, while the Earth Island Institute acts as a fiscal sponsor and provides administrative support, all fundraising for projects embarked on by the JMP is done exclusively by the JMP. (Hanson Decl., ¶¶ 2-3). Similarly, as Mr. Hanson also attests, while the Center for Biological Diversity ("CBD") provides certain staff assistance for development of factual issues arising in JMP cases, the JMP itself indemnifies CBD against any fees, costs or bonds for JMP projects. Id. at ¶ 3.

Significantly, with respect to JMP's budget, Mr. Hanson, as the Project's Executive Director, states that only $56,000 has been earmarked for forest litigation activities during 2006. Hanson goes on to state that every dollar of that budget for the remaining fiscal year is needed to sustain payroll and expenses related to JMP's current cases. He opines that any unexpected contingency, like imposition of a substantial bond in this case, would be devastating to JMP's ability to effectively maintain its current cases, let along challenge any additional logging projects it feels run afoul of environmental laws. Id. at ¶¶ 5,8).

It should also be noted that declarations submitted by administrative personnel for both the Earth Island Institute and the CBD further attest to the fact that the stated assets of both organizations, as reflected on their tax returns, are not indicative of discretionary funds available to pay the dramatically increased bond amount advocated by Intervenors. With respect to Earth Island, Director of Administration Yvette Hash explains that her organization acts as a fiscal sponsor for about forty different projects, each responsible for its own staffing, fundraising, and program work.  (Hash Decl., ¶ 3). According to Ms. Hash, Earth Island consequently cannot divert funds given for one program or Project under the Earth Island umbrella to another program or Project, because doing so would violate donor intent, expose Earth Island to potentially costly legal liability, and put the entire organization at risk. Id. at ¶ 5.  As an example, while Earth Island's total year-end assets for 2004 were reported on its tax returns as nearly $6 million dollars, almost $3.7 million of that total constitutes the corpus of a Wetlands Restoration Trust Fund established by a Stipulation and Consent Decree of the Southern District of California.  That restricted fund can only be used for wetland restoration projects.  Earth Island's remaining assets consist primarily either of other funds earmarked for other specific projects or receivables that denote pledges made, with the corresponding funds not yet received. Id. at ¶ 6.

Similarly, with respect to the CBD, the bulk of its assets also constitute grants dedicated towards specific funding objectives.

According to Executive Director Michael Finkelstein, funds remaining for general operating expenses in 2006 have already been allocated. Financing a significant bond out of general operating expenses at this juncture could require elimination of administrative staff positions at the Center. (Finkelstein Decl, ¶¶ 4-5).

Unlike Save Our Sonoran, Plaintiffs here have shown, through the evidence enumerated above, that imposition of a substantial bond would pose a considerable, if nor unsurmountable, financial hardship affecting their ability to mount challenges like the present case to environmental actions allegedly running afoul of the law.[2]  That showing not only distinguishes the present case but also compels a finding that no additional bond should be required.  As Plaintiffs point out, the overwhelming majority of district courts in this Circuit have issued injunctions on cases involving logging on public lands with, at most, only a nominal bond.  (See Pls.' Reply, p. 5, and cases cited therein).  Indeed, with the exception of the Save Our Sonoran case distinguished above, the parties have cited to no decision within the Ninth Circuit requiring public interest plaintiffs like Earth Island and the CBD to post a substantial bond, pursuant to Rule 65(c), as advocated by Intervenors.
///

---

[2] Importantly, Plaintiffs also assert that they are the only organizations which consistently challenge Sierra Nevada salvage timber sales of the type at issue herein.  Hence, if Plaintiffs are thwarted in their ability to challenge such projects by imposition of substantial bond requirements, there would appear to be a real possibility that the projects would evade judicial review altogether.

7

Additionally, in determining the propriety of a surety bond in any case, the Court must consider the likelihood that Plaintiffs will ultimately prevail on the merits, since the very purpose of such security, pursuant to Rule 65(c), is to mitigate damages suffered by a party ultimately found to be "wrongfully enjoined or restrained."  As recognized by the Ninth Circuit in its Van De Kamp decision, Plaintiff's likelihood of success on the merits "tips in favor of a minimal bond or no bond at all." Van De Kamp, 766 F.2d at 1326.  Here, the Ninth Circuit has already found, upon review of this Court's prior denial of Plaintiffs' request for preliminary injunction, that Plaintiffs have shown a "strong likelihood of success on the merits" as to both its NEPA and NFMA challenges to the logging projects at issue.  Earth Island Institute v. U.S. Forest Serv., 442 F.3d 1147, 1159, 1176-77 (9th Cir. 2006).  Hence, even if Plaintiffs had not been successful in showing that imposition of a bond would pose a hardship chilling their ability to mount environmental challenges akin to the present case (which Plaintiffs have in fact been able to do in this instance), the fundamental premise on which a security requirement is based appears absent given the likelihood that Plaintiffs will prevail and Intervenors will consequently not have been wrongfully enjoined.

///
///
///
///
///

For all the above reasons, the Court rejects Intervenors' request for a more substantial bond in this matter.  Bond will stand at $1,000.00 as originally ordered by the Court.

IT IS SO ORDERED.

DATED: November 20, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE